Good morning, Your Honors. May it please the Court, Anne Barhom for Lackbear-Singh. And I'd like to reserve three minutes for rebuttal. Keep your eye on the clock. We'll try to help you. Okay, thank you. So, Your Honors, this case comes on the heels of a case that was decided about a week ago, another Singh v. Garland case that deals with relocation specifically. And that's where I feel that petitioner feels that the BIA analysis of internal relocation was flawed. And I know that there are two questions that the Court has submitted for us to address, so I'd like to address those first. Okay. The first question is whether the immigration judge made an adverse credibility finding as to the petitioner's testimony about the incidents that occurred after he left India. Well, if you look at the IJ decision specifically and the BIA decision upheld that, the problem that I found with those arguments that the judge made is he decided on whether or not the BJP Baudel party was in power at the time that... But that's a separate question from whether he made an... I mean, did he make an adverse credibility determination or not? I don't believe he did. Okay. He may have made other mistakes, and you want to address them. Correct. But I think... But sort of the preliminary question is just whether he made an adverse credibility determination, and you don't think he did. No. I think he found it unpersuasive, the argument. But I don't believe it was specific to an adverse credibility finding. On the second question, whether the record shows the BJP and Baudel parties aligned in 2018 and that the Congress party assumed control of the Punjab in 2017. Before we get to that, that's kind of the second part. I just wanted to note something to get your sense of how the IJ weighed this. By my notes, the IJ looked at the mother's statements, felt they were unreliable because her affidavit had not been properly authenticated or notarized, was drafted by an interested person not subject to cross-examination, was not dated, was untimely, and was vague, and was otherwise hearsay. As you say, what happened here was a weighing. It wasn't adverse credibility. Correct. What's wrong with that? I mean, as you know, I'm very much aware of this, but since 2018, we have had at least 26 Singh versus whoever the Attorney General was cases with virtually identical facts. It's impossible that they all be true. And I want to address that later on in whatever we do with this disposition. But under the circumstances, I find it hard to believe that the IJ could not weigh this potential discrepancy. Am I missing something? Well, Your Honor, in immigration court cases, hearsay pretty much happens all the time. But it goes to the weighing, does it not, though? Well, it's very difficult for testimony to come out of a far-flung country like India. I've done many IJ cases where it's impossible to have the deponent actually be present or even to testify. Before COVID, there was no way we could ever have anyone testify from a foreign country in an immigration court case. And I understand that. I understand that. I was just in India, and there were some really smart, really capable people there. And they know how to use technology very, very well. And my point is simply this. I'm not trying to be critical of your client or the client's mother. I'm simply saying that when you look at what was presented to the IJ, it was perfectly appropriate, was it not, for the IJ to look at what was presented, including the fact it's hearsay, and say, you know, I don't give a lot of weight to this. Isn't that right? Well, Your Honor, I think he was talking about the date. And if I read the transcript correctly, at the bottom, I think it had been cut off, the date. But it wasn't notarized. It was drafted by the mother. There was no chance for cross-examination. You're a good lawyer. If somebody were in the courtroom and they presented something that was directly opposed to what you believed to be the truth and you had no chance to cross-examine, you'd say, no, wait, wait, wait, wait. I need an opportunity to cross-examine. None of that occurred here. But, again, Your Honor, it's impossible to cross-examine someone who's in India. Exactly. But it still goes to the weight, though. Can I ask you a question that sort of takes us away from whether the declaration, statement, whatever it is, was accurate or not? And it's what troubles me about this case, so I want you to have a chance to respond to it. The centerpiece of this case is the IJ's finding that your client could safely relocate within India. Exactly. And he makes two findings, really. He says he could safely go back to Punjab, but he could safely relocate in other places in India. And the record seems to support that conclusion. There's plenty of record evidence in the country reports that would at least give substantial evidence that supports that conclusion. Without regard to whether his mother's declaration is accurate or not, the record also seems to indicate that only hardcore militants were being pursued. And the IJ made a factual finding that your client was not a hardcore militant. So to me, I'm having trouble figuring out why at least the portion of his finding that your client could safely relocate out of Punjab is not supported by substantial evidence and not affected by any problems with treating the affidavits, et cetera. Could you respond to that? Absolutely. Your Honor, the IJ did not consider all of the country conditions that the respondent, now petitioner, submitted to the court. Well, but did he submit any country condition reports, any country condition evidence? Oh, yes. That's a gentleman we finished because you may be answering the question I'm not asking. Did he submit any evidence that showed that the police were pursuing people other than hardcore militants outside of Punjab? There are several indications in the country conditions that did point to that. Tell me where they are. I have to find them, but let me look. I understand he had his mother's declaration that the police had come to the house. Right. Whatever weight you give to that, it only shows that somebody was looking for him in Punjab. Tell me that. So I'm trying to find the evidence about pursuing people other than hardcore. And maybe when you get up for rebuttal, you can tell us. Yeah. I'll find the exact spots, but there were several instances. And interestingly, the IJA did not refer to any of the country conditions that were in the respondent and now the petitioner's submission. So I found that rather curious. And the BIA also alleged that the respondent's arguments were taken into account when they cited that they were referring to Exhibit 7, which was the only government submission. The government has the burden. The burden shifted to the government on the relocation issue, whether it was reasonable. Right. And I guess my starting point is that looking at what's in the record, I think an IJA could reasonably reach the conclusion that relocation was safe outside of Punjab. You might disagree with it, but the question is whether there's substantial evidence to support that conclusion. So I'm trying to figure out why that isn't dispositive of this case. Well, particularly in light of the recent Singh v. Garland case that specifically looked at relocation that was a published decision on March 22nd of 2024. It definitely talks about Sikhs having difficulty relocating to other parts of India, and they didn't necessarily have to be militants, as was described. But aren't we limited to the record in this case before this IJA? See, I'm not sure we can look at another case and say we should import the record from that case into this one. Well, particularly, I wrote a case called Singh v. Whitaker, which was the definitive case on relocation at the time, in any event. And the government here submitted a document entitled India, Feasibility of Relocation of Sikhs and Members of the, basically, Man Party. And they addressed the very points that I made in that controlling decision at that point. Looking at that, I failed to see where the government did not produce substantial evidence that complied with the law, and I think still does, control. What am I missing? Well, I think, Your Honor, also in that report, the Congress report, it also says that it depends on the circumstances of the individual. Of course. Whether or not they can relocate. But as my colleague pointed out, where is there any evidence in this record that shows that your client was a hardcore militant? He said that the police identified him as such, as a militant. Well, that's if you believe the mother's affidavit, basically. Ms. Barhom, I wonder, we didn't let you answer the second question in the focus order. Do you believe there's anything in the record supporting the IJ's determination about the change in control as that might affect the credibility of the mother's affidavit? No. I didn't see anything in the record. I looked, I mean, I read through everything, and I couldn't find what he was talking about in the record, which, frankly, I found very disturbing. Is that determinative, or does the IJ speak to enough other evidence in the record on substantial evidence review that we're not compelled to disbelieve that story? I think it's compelling that he wrote that in his decision and that the BIA upheld his decision. Specifically, I felt that reading the transcript, he was talking about facts that were clearly not in the record. Well, he seems to be saying, and this is what troubles me about it, too, and I need your help on it. He seems to be saying, I'm taking administrative notice of a country-conditioned report, and yet I'm not sure I can find that report in the record. Now, if he took judicial notice of it, I guess we can, too. And so I'm trying to figure out, if you know, and I'll ask your friend on the other side the same thing, what report he's referring to. I was at a loss. I mean, I read through everything very carefully, and I couldn't find what he was talking about. So I found that that was a problem. But there are more recent reports than the ones that you cite, and they were apparently current at the time he was doing it. Can we take judicial notice of those reports to see whether they support what he said? I mean, I don't see how you can do that without pointing to a specific document and the specific evidence in that document that would support your statement. I didn't see that in the report. I mean, I didn't see that in his decision. I didn't see that. And we just don't know what document he was referring to. I have no idea what document he was referring to. Plus, you have to remember that this case was decided in November of 2018. There was no 2018 report from the State Department because it comes out, you know, a full year later. It looks back. It doesn't look forward. So I was confused as to what he was referring to, if he was bringing in his own personal knowledge and not the information that was actually the evidence that was actually in the record. What country condition reports for what years were in the record? I'm sorry? What years were in the record, the country condition reports? There were no State Department country condition records in any of the submissions. It was the document I referred to a few minutes ago entitled, hold on one second here, India, Feasibility of Relocation of Sikhs and Members of the Manifest. That's at EAR 109, 197. That was in the record. Correct. And that was a 2018 report, but if you look closely at all the sources, they were from 2013. The latest, I believe, was 2015. So he's talking about events in 2016, 2017, and 2018. Do you want to save any of your time? It's entirely up to you. You're way down. Okay. I wanted to reserve three minutes, but I guess I'm two minutes shy. Okay. Thank you, Your Honor. Thank you very much. Okay, let's hear from the government. Ms. Clay. Good morning, Your Honors. Good morning. May it please the Court, Sharon Clay on behalf of the government. Can you help us out with the factual questions we just asked? Okay. With regard to the factual question on the control of Punjab from 2017, I do concur with opposing counsel that I couldn't find anything in the record. But what I will allege, or what I will assert here, is that the immigration judge is allowed to take judicial notice of evidence that he took. Well, I think he is too, but how can we tell what evidence he took? Normally, somebody says, I'm taking judicial notice of this report or this document or this fact. Correct. How can we check to see whether he was right? Well, these particular facts are actually more readily determined from official government documents in general. Which official documents? Actually, this Court has actually held or acknowledged or recognized that the Congress Party took over Punjab in 2017. Well, yeah, but I guess I think it's a pretty fundamental principle of our review of the administrative record that we're stuck with the record that's before us. And I think as Judge Hurwitz has pointed out, there isn't actually any judicial notice taken of it, and we can't do substantial evidence review if we don't know which evidence may or may not compel the result. She can't rely on the better record in the other Singh case, and I'm not sure you can rely on the better record in yet another Singh case. Correct. But I guess my point is that the Court has determined that this body is able to take judicial notice of facts that can be accurately or readily determined. Specifically, though, it's been held in Carvey-Whitaker. I mean, not Carvey. Carvey-Garland. Let me double-check my record. Carvey-Wilkinson, I apologize. The Ninth Circuit has actually accepted, I guess based on multiple different cases that have alleged this, it's not the only case that has established that the Congress Party was in control in Punjab. And that's a fact, so you think we can look at another case and say that fact was established? I do. And it's kind of clear to me that the agency took administrative or judicial notice because on page 52, the immigration judge actually said, to my knowledge, he just clearly said, to my knowledge. So when he goes through this whole factual determination about who was aligned with who and when the activities or actions happened, all of these facts are actually readily discernible. I'm interested in relocation outside of Punjab with this question. Whatever the dispute is about who controlled Punjab and whether police came to the house, the IJ makes a finding that Mr. Singh could safely relocate in another part of India outside of Punjab. Correct. And there seems to be, in the report we just cited, some evidence to support that. We review it under the substantial evidence standard. Your friend doesn't dispute that, but she says the IJ never dealt with the contrary evidence that was submitted that it might not be safe to relocate out of Punjab. Can you deal with that question for me? What I would argue is that to the extent that the record does kind of show that persons with militancy or suspected militants may have difficulty relocating in other areas of India, the evidence that's presented in this particular case, and in this particular case it's actually hearsay evidence, is insufficient or unreliable to be able to establish. Well, but the IJ made a specific finding here. Yes. The IJ said, looking at this report, it appears like it might be difficult for hardcore militants to relocate, but you're not a hardcore militant. Correct. So I'm trying to figure out what other evidence there might be in the record that he should have discussed when reaching that conclusion. And that's what I was giving your friend the ability to come back on rebuttal to talk about it, so I want to make sure you have a chance to talk about it. Well, the immigration judge actually gave a whole litany of explanations for why they didn't think that he would be suspected of a militant and that man party members are not generally looked after. Repeatedly in the record it kept showing that the government did not target individuals who held man party ideals or believed in a Calestinian state. What it did say on a regular basis is that they did pursue militants. And in this particular case, Mr. Singh, who's sort of a low-level worker for the organization, as well as the fact that the country conditions have changed, I mean the parties changed, they realigned, so there's no telling whether or not, you know, okay, let me just say this. The elephant in the room actually is that BJP party, which is the central government of India, has taken no interest in this particular petitioner. And under the evidence that's in the record, the record shows that so long as the central government has no interest in you, that relocation is even feasible for militant individuals. Well, I guess part of that depends on what we make of the mother's affidavit and the evidence of the police pursuing him, which, if true, would be quite probative. Correct. But the problem with the hearsay evidence is that you can't test the credibility of his mother, and so you have to rely on the veracity of the claim being asserted. And if the claim being asserted is that, oh, my gosh, I'm going to be chased after by these bedal BJP party members, but the Congress party is actually in control, it sort of undermines that whole argument. Why isn't the IJ's determination to, I think, essentially give the affidavit and then the petitioner's re-reporting of the affidavit no weight? Why isn't that an adverse credibility finding that's kind of cloaked to avoid our procedural requirements? I think it's because hearsay is sort of a different animal. Unlike other testimony where you can actually be subject to cross, a hearsay statement, let's just say a liar can tell the truth and an honest person could actually tell a lie. So if you can't speak to that individual to ascertain the truth, then the credibility of the document takes less emphasis, and the persuasiveness of the evidence or the information in the document should actually compensate for the inability to be able to ascertain the credibility of the declarant. It's a little bit strange in this case because Mr. Singh's testimony about what happened after he left is all based on what his mother tells him or what others tell him. So I don't think the IJ is really saying you're not telling the truth about what others told you. He's discounting what others told you. Is that an adverse credibility determination about the others? There really isn't one as to him when you look at this record. I do not think it's an adverse credibility finding for the petitioner because he shouldn't be condemned for relaying information that he could have gotten. That information could be true. That information may not be true. So he's relaying what his mother told him. He is, right. He's relaying what his mother said in this declaration or otherwise. And there would be no basis to find him adversely credible based on that act. So even with the hearsay then, I mean, is your view that the IJ gave the mother's affidavit no weight or just some weight and then there are these other things that may or may not be in the record that impact that weight? I think it kind of snowballed. I think it initially kind of went little weight, but as you start considering some of the other evidence in the record like his behavior, the interest from the local state authorities, the fact that the Congress Party is no longer in control, and all the technical problems that they had with the original document to begin with, and the fact that the document was submitted zero hour, it's two weeks before the hearing. Well, I guess it would have been. That makes our review a little trickier than it might otherwise have been because I see right at 43 and 44 the IJ says less weight, so not no weight, less weight, some weight. So less weight for A and B, some weight to B and C, so both less and some weight for B. But it raises both questions about hearsay, and we've talked about that. I think it was well put by you in terms of the issues with hearsay. It also raises the authentication issues. But the IJ does admit all of those documents into the record, notwithstanding the authentication. So I guess with respect to the authenticity problems the IJ might have had with the documentary evidence, they're kind of either in or out on that basis, are they not? Okay, not necessarily. What's the other alternative? Well, I mean, you would admit it, but you would just assign whatever weight that you can to the evidence. But in that weighing, can you re-weigh the fact that you think they're inauthentic? Well, when you're confronted with multiple conflicting pieces of evidence, maybe when you're focused on one evidence at one particular time, it might make it appear like it has less weight, and then when you might compare it to another piece or body piece of evidence, then it looks like it has no weight. So if we take the let's assume on substantial evidence review, as we take these pieces of the record puzzle apart, let's assume that the change in government that's not in the record, let's assume that that's not properly noticed. Maybe it is, maybe it isn't. Let's take that out. Let's discount but allow the give the mother's affidavit some weight. It's a little weight, but it's a little weight to a very concerning incident. Still substantial evidence, and why? Where would we look for that? I would still say that substantial evidence cuts against Petitioner's claim. And this is because of the relocation or no fear of persecution to begin with? What's your strongest kind of leg here? Alternatively, either one. Okay. The change of country conditions, as well as his ability to relocate. The technical problems with the affidavit itself adds to the credibility problem just generally, because we can't be even certain that his mother even signed this particular document. Well, it has to be a persuasiveness or believability problem. Correct. It can't be a credibility problem. Right, it's not. Because he has steps he has to go through for that. Correct. It has to be whether or not the evidence persuasive. Let me just ask this. My reading of the report that the DHS submitted about the feasibility of relocation does talk about government change, does talk about just going after militants. The only evidence that I saw that there's a claim that this petitioner was a militant was arguably from what the mother said based upon the police coming. So if the IJ gave little weight to the mother's testimony, then you have nothing that really says he is a militant, and you have the argument based on the documentation that was clearly in the record from the DHS that says that's the only people they go after. So ultimately, it ends up that the government meets its burden by putting substantial evidence about who it goes after, and nothing is there to say that this guy is a militant. Is that correct? Correct. The record does show that there's nothing here that really says that he's a militant. So my concern is a little bit on the other side, and I'm curious, and fortunately between having you here and Judge Smith here, I think we can get to the bottom of it. So in the Whitaker case, I think our court's concern was the opposite, that basically the error, one of the errors we assigned was that the IJ had assumed that the Petitioner would not advocate at all for his political beliefs in the calculation there. So I get that there's not evidence that he's going to be a strong militant, which would factor into all of these other things. But does the IJ sufficiently credit the fact that the Petitioner would still remain politically active, as I think he must under Singh v. Whitaker? Actually, I didn't read the IJ's decision that way. I read it that he didn't preclude his ability to actually proselytize whatever he wanted to do in other regions of Punjab. And he actually referred to the statement that he would be allowed to actually, they don't target people for their Khalistani beliefs, they don't target them for proselytizing about them, and actually they engage in their activities openly. The record clearly shows that. Just so we can get on the same page, where in the IJ's? I don't have my computer open. I'd be more than happy to give you the specific location. But my reading of it was that the immigration judge understood that had he gone anywhere in the Indian area outside of Punjab, that he'd still be able to practice his religion, to politically hang up posters, that there was basically no evidence in the record that would show that he would be targeted for that basis. We have about 32 seconds left. Any other questions by my colleagues? All right. Thank you very much. Thank you. So, counsel, you have some rebuttal time. Not a lot, but you have some. So, Your Honor, I quickly looked through where I marked about internal relocation in the petitioner's submission to the IJ. And on page 238 of the car and page 272 of the car, it talked about difficulties for Sikhs in particular to relocate. Also, I'd like to mention that one of the... There was that evidence in the record, but there's also substantial evidence the other way, isn't there, given at least the report we can find in the record? Well, even in the government submission, Exhibit 7, page 3 of that, I don't have the car number, but it says internal relocation may be an option. So it's not conclusive that it's absolutely possible to relocate within India. And page 6 also highlights the difficulties for Sikhs to relocate in particular. But the report then goes on to say that the central police, at least, are only pursuing people that they view as hardcore militants. So the only evidence we have of militancy is the mother's statement that local police described him as a militant. Is that fair? Well, Your Honor, if you look at what was submitted by the respondent, now the petitioner, he submitted a letter from the founder of the Maan Party, who talked about the BJP and how they are Hindu-centric throughout India. So that causes a problem for a minority like Mr. Singh, who represents the ideals of the Maan Party, including an independent Halestan and other issues that the Maan Party holds dear. So, yes, I think it would be a really huge problem. Well, that may show discrimination, but does it show persecution? Well, the central authority, it said in, I believe, on page 272 of the card, did say that the central authority is controlling and that they would affect whether or not a person would be pursued by the police. May I ask either colleague, do you have additional questions? Thank you both. Your argument, we appreciate it. The case of Singh v. Garland is submitted.
judges: SMITH, HURWITZ, JOHNSTONE